We're here counseling Shiranlioglu against Lynch. Mr. Formica, go ahead. Good afternoon, Your Honor. My name is Glenn Formica, and I represent Mr. Kuranlioglu in this appeal. Your Honor, assuming the court's familiarity with the immigration process, I want to draw the court's attention to one... Well, we get a lot of immigration cases. That we will concede. A few years ago, I might not have said that. But familiarity with the process, it's a lot of complexity. Your Honor, as you may be aware, this is an I-751. 216C of the INA is where most of our attention and argument lies. And what this involves is that after a United States citizen petitions for his or her spouse, if it hasn't been adjudicated within two years at the time they received the original green card, the original permanent resident status, they have to file for removal of conditional residence. Now, that's under 216C. And that's what happened in this case. Mr. Kuranlioglu... He did file jointly. He's married in 2002. This is all part of the record. 2002. They file, I assume, from what I can tell from the record, timely, the removal. And then, inexplicably, or maybe explicably, CIS sits on this for a good while. Several years. No adjudication. In the meantime, the relationship falls apart. And it fell apart in 2005. And then he... I believe he's denied on that. And then he files the waiver, which basically says under C4, 216C4, I entered into this marriage in good faith, and it just didn't work out. And here's why. And then that waits a good long while for adjudication. Now, the issue here is that had there been a timely adjudication, C3, they would have had 90 days after they interviewed him to render a decision. Marriage fell apart. Then he falls under C4. And in a moment, I expect the government is going to explain their argument within these two different statutes. I'm not going to make that argument for them. But I will say to the court this, is that the government can't have it three ways. It can't on the one hand say, you need to file within two years of the marriage your conditional residence. Not adjudicate. Then say with a waiver, not adjudicate. And wait 12 years later and say, okay, we're going to adjudicate this now after CIS has denied it, after you're sitting in front of an immigration judge, and say, prove it. Prove it all the way back 12 years. And have witnesses and evidence and everything else come in. And make sure there's no inconsistencies, there's no failure of memory. It's on you. Now, we've laid out in our brief why we don't feel that based on the statute. Did you make this argument to the BIA? So it's unexhausted. It's not an argument that was made to the BIA. I do want to point out to the court, I take responsibility for the record as the appellant here. However, I was not the attorney who wrote the BIA. I wasn't in counsel at all. No affiliation. Judy Sporn was. And she wrote a very efficient brief. Let's put it that way. And it was an efficient brief. Specifically on facts. Now, the government doing their part as a part litigant, and this is not mentioned in their brief, in a very helpful manner, wrote a motion for summary affirmance. And in that, at least bullet point, the key arguments. Referencing Zhang, which is the subject of our brief, and Bullock, which is the subject of both of our briefs. So, and the BIA, in its discretion, decided not to write any decision at all. And I expect the government's going to make a considerable argument about this wasn't preserved. I believe it was, and I also believe the court, because it's non-jurisdictional. Why is it the issue of whether or not the marriage was sham, which was within the agency's discretion, the issue in the case? And how does that, how do you get around that? Your Honor, language is kind of important in this regard. Sham marriage goes to something else. This is just whether or not he could meet his burden of proving that the marriage had, that it was a bona fide marriage. In other words, if we were looking at. In other words, it was not entered into in good faith. And for the reasons that we hope most people get married. Or can't meet that initial burden under C3. Can't meet the burden of showing that. So it's possible, it's very possible, and it happens quite frequently, Your Honor, especially when you're dealing with immigrants who don't have a lot of paper around them and may be in a non-traditional relationship because of poor jobs. Is your argument that somehow the government has stopped from making the arguments they're making because of a delay here? Or that, I mean, I still don't understand how you get around the denial of the waiver was a discretionary decision based upon a decision on whether the marriage was entered into in good faith. Your Honor. I mean, you're talking about what happened, giving us a history of what happened. But maybe you could tell us why the denial of the waiver issue isn't the key issue of the case. Your Honor, in immigration proceedings, and this goes to your question about discretion. And it's, I think, important to understand. In immigration proceedings, they do have discretion. I don't deny that. Nobody denies that. It's in the record. However, the context of that discretion, I believe, needs to be very carefully looked at. Because when the person deciding your case is the judge, is the jury, and is the prosecutor, and you're sitting there with the argument of a burden to prove, that discretion needs to be carefully managed. In other words, you can't, and of course, you have the arbitrary and capricious, and I'm not even talking about that. I'm saying things like you wait 10 years, you delay adjudicating it, and then you place an onerous burden on inconsistencies caused by delay. That goes to whether that discretion is being properly applied. And I don't believe, under the INA, that's how the INA was intended. And we make those arguments in our brief. So you're saying that that's a question of law, the circumstances of this delay, set up a different scenario that require us to examine it. Because otherwise, if it's purely discretionary decision, it's not reviewable. Correct, Your Honor, on discretion. And the one thing I want to just, and I'm saying this, not so much argumentatively, but to place it in context, why that discretion is so important. You're having an individual government official making very important decisions involving oftentimes, not necessarily in this case, but oftentimes a United States citizen. And that person's biases, prejudices, life experiences, and so forth can come through. And if those biases, prejudices, life experiences, and so forth are not governed by a very strict review of that, quote, discretion, you can have awful abuses and you can have awful inconsistencies. That's why the BIA is there, presumably. You could bring that up to the BIA. And then with respect to what you describe as discretion, we've described as the weighing of the evidence, which is not subject to our review. Correct, Your Honor. And just to that point, giving a little, giving the benefit of the doubt to the brief at the BIA that Judy Sporn, she wrote a very fact-based brief. And she does, granted you have to take a somewhat liberal view of what she's writing about, she does raise these in a fact-based way. She doesn't... It's all about credibility. It's all about... Correct, but I think you can extrapolate from that. And also tying in the summary affirmance where at least red lights or highlights some of the legal issues involved, putting those two together, it's not fine pottery. It's a pinch pot, but it's still pottery, if the court follows my meaning. I think there's enough there that was raised at the BIA. And also the BIA sees a lot of cases. Thank God we have this court to come to. Thank you, Mr. Formica. Are you free to share some time? Yes, of course. And we'll hear from Mr. Goldman. Thank you, Your Honor. May it please the court. Dan Goldman on behalf of the Attorney General. The court should uphold the agency decision and dismiss the petition for review. The government believes this court lacks jurisdiction in this case for two reasons. First, as was noted earlier, Mr. Keralo failed to exhaust his arguments before the board. He also, as was noted earlier, failed to exhaust the new argument that's been offered here today. Does it fail you to exhaust the privacy of jurisdiction to hear the claim? The short answer is in this case, Your Honor, it should. This court has a long history of discussing issue preclusion, claim preclusion. As a jurisdictional matter? Yes, Your Honor. You're saying we are deprived of jurisdiction because of a failure to exhaust? Generally, this court's jurisprudence has recognized that claim preclusion is a jurisdictional matter. Issue preclusion would be mandatory, which then gives the government the opportunity, as this court noted in the Lin Zhong case, to object based on exhaustion. In Lin Zhong, as the court noted, the government did not raise the exhaustion issue, did not raise that affirmative defense, and the court therefore exercised jurisdiction over those arguments. Our brief in this case absolutely raised exhaustion. And to the extent that I can raise an exhaustion objection today in response to the new arguments that are offered here today, I would do that. Is the bar to continuing the case after a failure to exhaust jurisdictional or prudential? Is it a strict jurisdictional rule, such as statute of limitations, or a failure to file a brief within a period of time, or is it something else? And this court has a lot of case law, Your Honor, discussing all the different aspects. Claim preclusion, for example, the failure to even appeal to the board, would be a jurisdictional bar where this court couldn't exercise jurisdiction. What this court has said is there's a little bit more leeway in terms of issue preclusion, and that if the specific argument that's raised, for example, in an asylum case... We're talking here about arguments, I think. I'm sorry, Your Honor? We're talking here about arguments. We are, Your Honor, but I think this one gets a lot closer to claim preclusion. When what we're hearing today in this court for the first time is the type of argument that absolutely could have been raised, number one, to the Immigration Court, and number two, to the Board of Immigration Appeals, and then you have the government, both in our brief and today, raising what this court called the affirmative defense of exhaustion. This court should not exercise jurisdiction. On these facts, you're saying? That's correct, Your Honor. There could be a set of facts in which there would be a manifest injustice if we didn't exercise jurisdiction, and then we could correct it. Your Honor, I would hesitate to say never, never, never, although this court has addressed that sort of manifest injustice situation. I'm blanking on the case name off the top of my head, but this court has actually said even in that manifest injustice situation, to exercise jurisdiction would not be appropriate. I'd also like to determine, Your Honor, that the actual decision in this case is a credibility decision. The plain language of the statute, 216C4, and this court's decision in Contreras-Salinas, specifically says this court lacks jurisdiction to review that credibility determination. I would also, although without waiving that exhaustion argument, I'd like to address a little bit, Your Honor, the arguments that were raised here today. The fact that someone has to wait to make their case. That's at some level the nature of the business, but I'd also point the court to the fact that some of the delay in this case was actually due to Mr. Piernolo's delays. He came to court in 2011, much closer in time to when he was married, and he asked the court through counsel for a continuance because his star witness, his ex-wife, was not available. A year late, that's according to what was said in the record, Your Honor, page 67, to 78. She had just started a new job, she's on a probation period, couldn't come to court. The case has continued then from 2011 to 2012. Prior to the immigration court hearing in 2012, there's a different reason offered. Mr. Piernolo comes in and asks or notes that his ex-wife, through counsel, says this, is now refusing to appear and to testify. The case has then continued again, albeit due to health reasons for counsel, but that's not something that the government should bear the burden for. When this case ultimately gets to immigration court in 2014, counsel for Mr. Piernolo offers yet a different explanation, talking about how there was maybe something related to the scheduling of the case in 2011. So the same attorney in 2014 offers a different explanation than she did on the record in 2011. In addition, Your Honor, we are not talking, to the extent that I can assure the court, we are not talking about questions that are asked, what did you have for breakfast on July 17, 2003? Those are not the basis for the decision here. The key distinctions here are with regard to when they separated and were Mr. Piernolo and his ex-wife living together at the property that he purchased without putting her name on the deed, without putting her name on the mortgage, were they separated at the time? Mr. Piernolo says no. His brother says they never lived together at that address. And in fact, her letter from 2010 never mentions living at that address. And I think that omission in and of itself is telling. She goes through a good amount of detail saying they lived together at this address, this address, this address, three different addresses, but then omits completely the 10 Minor Road address, which is when, according to Mr. Piernolo, he had purchased this property. That's when she moved out. That's when they separated. And the testimony to the extent that there's some suggestions to when this marriage fell apart, when he's asked on the record, and I believe it's page 115, he's talking about how he found out about the opportunity to buy this property. It was next door to his brother's house. He gets a call. His brother says, hey, property right next door is available. You can buy the house right next door to me. And according to Mr. Piernolo, we contacted the broker, negotiated on the price, and I told Michelle, his ex-wife, we got so happy, and then she said, yeah, it would be nice, you know, and I bought it. That testimony from Mr. Piernolo is in the context of him being with his then-wife, but according to his brother. Let me belabor the jurisdictional point again so that I completely understand this. The government's position is that the failure to exhaust a claim before the BIA would deprive this court of subject matter jurisdiction. Is that correct? Yes, Your Honor. And the government's position is that in this case, the arguments that it maintains were not exhausted are, in effect, claims, not issues. Is that also correct? Yes, Your Honor. And if we were to disagree with you on that and view the failure to exhaust as a failure to exhaust individual issues or specific arguments as opposed to broad claims before the BIA, then the answer is that we are not deprived of jurisdiction. We may have to deny the petition for other reasons, maybe the ones that you were just suggesting, but we would not be deprived of subject matter jurisdiction. Is that correct? I think I would agree with just about all of that, Your Honor. Or with regard to exhaustion, there's a couple of even ifs. Even if this court does not dispose of this case based on exhaustion, then we get to the second jurisdictional basis. That's the 216C4 statutory reason, which this court recognized in Petraeus Salinas, which says very specifically that the jurisdiction to review a credibility determination that's made in this context of a discretionary denial, that's not subject matter. That we have no jurisdiction over. That's not what I'm talking about. Yes, Your Honor. So on the claims or issues, however you want to characterize them, let's say issues as to which he is not exhausted, you are taking, I think, the position that we really should view those as claims. But if we disagree with you, then we would not be deprived of jurisdiction. There would be other reasons to deny. Is that correct? Yes, Your Honor. And I would argue specifically that there's a lot of, looking at this court's jurisprudence with regard to exhaustion, there's a lot of case law out there. Somewhat all over the map. I would hate to say that directly to the court. Well, you don't have to say it. I'll say it for you. Yes, Your Honor. But in this case, this is not the case where the court needs to get into all of that all over the mapness because this court has a second jurisdictional basis on which it can reject the petition. And even if, even if this court were to get beyond exhaustion, and even if this court were to get beyond Contreras, Salinas, and 216C4, then we get down to a credibility finding for which there is ample support in this record. And on that last point, Your Honor. That would be a third of your reasons for denying the petition. Yes, Your Honor. There may be more. Are there any more than three? The last point, Your Honor, I see my time has expired. Go ahead. The last point I would make, Your Honor, is the credibility finding in this case is distinguished from credibility findings in a lot of other cases where you're weighing government witness testimony or government documentation versus the individual's testimony or documentation. Here you have Mr. Kern Lowell's own witnesses and own documentation which creates the discrepancies. And on that basis, Your Honor, for all of those reasons, we urge the court to uphold the agency decision. Thank you, Mr. Goldman. We'll hear from Mr. Formica. You have three minutes. Your Honor, in the fullness of time, I'll rely on our brief to sort of litigate the facts and who said what. I would assure the court we have a rebuttal. But getting back to, because I sense it's a concern of the court, this exhaustion issue, I would encourage the court, there's a decision, Yasmic, or it's not a decision yet, I don't believe, Yasmic Ewan versus Lynch, and it's docket number 1311683. There is an amicus brief, I believe, addressing... Eleven what? What's the number? It's 13-11683. And I apologize, I probably should have pulled it before I came, but I wasn't certain it was relevant. Apparently it may be. But I would encourage the court to look at it. There is an amicus brief that was filed, and I believe it addresses that issue of exhaustion pretty thoroughly. But I don't know if the court necessarily, in this case, needs to cross that line. I think if the court looks at the brief that was written by Attorney Sporn and also the summary affirmance, I think there is enough material there for the court to find that these issues are at least in some form. And add to that, there is no decision of the BIA on this. The BIA has had plenty of decisions in time to write on discretion. For the court to grant this petition, I would ask the court, when it reviews our brief, to really focus in on this burden issue. Because I do think that this issue of burden is not clear in the statute, and I do not think it is clear with the circuit as far as who has the burden. And this would have a significant impact on this case as well as many others, of course. And it would also give guidance as to how these... This issue also was raised before the BIA either was it? A liberal view of the... This is the issue that you said, well, the person who represented the petitioner before the BIA really didn't clearly lay that out. I believe they made the argument through facts, and maybe not necessarily as clearly through law. Is that the broken pottery argument? Your Honor, this is a pinch pot, but I believe it can be a beautiful vase with a little water and spinning. But I do think that there is enough in the record, and I believe there is enough in our brief, and I think it has been addressed, and I think it is a perfect issue of law for the court to take up. Thank you, Your Honor. Thanks, Mr. Fumar. We will reserve the decision.